UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN L. McCARTY,

        Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security

        Defendant.
_____/

No. C 04-05060 MHP

**MEMORANDUM & ORDER**
**Re: Cross-Motions for Summary Judgment**

      Claimant Steven L. McCarty brought this action pursuant to 42 U.S.C. section 405(g) seeking judicial review of a final decision of the Social Security Appeals Council ("Appeals Council"). The Appeals Council granted claimant's request for disability insurance benefits beginning March 21, 2002, but denied his claim for the period beginning December 31, 1998 and ending March 20, 2002. Now before the court are the parties' cross-motions for summary judgment. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.    Factual Background

      Claimant is a fifty-six-year-old man with a high school education and additional training in automotive repair and bartending. Certified Administrative Transcript ("Tr.") at 175. Prior to ceasing work in December 1998, and for the preceding fifteen years, claimant was employed as a bartender. Id. at 170. Claimant alleges that a number of physical and psychological conditions have rendered him unable to work since December 31, 1998. Specifically, claimant claims, or at one time

has claimed, to suffer from degenerative back problems, rheumatoid arthritis, scoliosis, gastroesophageal reflux disease ("GERD"), Raynaud's Syndrome,[1] hepatitis B, hearing problems, and depression. Of these, the parties' arguments focus on claimant's back problems, Raynaud's Syndrome, and depression. The court's review of the facts will focus on each of these three impairments in turn, and will also address the other symptoms and impairments that appear in the record.

Claimant has attributed his disabling injuries to a history of chronic back pain, exacerbated by a fall on an icy driveway in approximately December 1998 which caused a herniated disc in the lower lumbar area. Id. at 19, 169. Over the years, claimant has seen a number of doctors for treatment and evaluation of his back problems. In addition, claimant's back condition has been assessed by the Disability Determination Service ("DDS"), a state agency, on multiple occasions. The reports of these doctors reflect a chronic, degenerative condition. See, e.g., id. at 302 (treating physician Betat's February 9, 1999 diagnosis of "chronic lumbago with recent exacerbation"); id. at 278 (chiropractor Daley's 1999 diagnosis of "chronic lumbar strain/sprain, gradual onset; lumbar and sacroiliac subluxations; cervical and thoracic subluxations"); id. at 275–76 (Dr. Bodor's mid-2000 diagnosis of low back pain, L4-5 mild central stenosis, L5-S1 disk degeneration, and possibly mild bilateral S1 radiculitis); id. at 283 (DDS evaluating physician Bellomo's November 2000 diagnosis of "chronic lower back pain with apparent scoliosis"); id. at 309–16 (Dr. Dipsia's April 30, 2001 residual functional capacity assessment with a primary diagnosis of chronic disc disease); id. at 521 (an imaging report from November 28, 2001 stating that since February 1998, claimant had "a few millimeters more anterior degenerative spondylolisthesis of L4 on L5 and has somewhat more destruction of the L4-L5 disk space"); id. at 667 (an October 21, 2002 imaging report stating that there is scoliosis of the cervical spine and "significant degenerative change, disc space narrowing and neural foramina narrowing at C5-6 and, to a lesser degree, at C3-4 and C6-7"); id. at 544–53 (Dr. Bradley's 2002 diagnosis of spondylolisthesis of L4-5, disk degeneration with spinal stenosis of L4-5 and L5-S1, and cervical disk degeneration with narrowing from C3 through C6); id. at 665 (a March 23, 2003 imaging report finding "[f]airly advanced degenerative disk disease,

cervical spine, without evidence of fracture"); id. at 507 (a July 1, 2003 "Disability Determination and Transmittal" form completed based on Dr. Nguyen's assessment, stating that the primary diagnosis was discogenic and degenerative disorders of the back); id. at 523–25 (Dr. Deviren's August 25, 2003 recommendation for surgery in the near future to address claimant's lumbar spine stenosis); id. at 511–18 (Dr. Thornburg's October 9, 2003 residual functional capacity assessment recommending a residual functional capacity of "sedentary" in consideration of documented degenerative disk disease and spinal stenosis).

Claimant has been diagnosed with Raynaud's Syndrome, a condition affecting the circulation in his right third finger. Raynaud's Syndrome was first diagnosed on March 21, 2002 and resulted in claimant's hospitalization from March 21 through March 24, 2002. See id. at 410. In June 2002, claimant's finger developed "an ischemic type episode" and became gangrenous in appearance. Id. at 596–98. To treat the Raynaud's Syndrome, claimant was given an anti-coagulant medicine, wore a splint to protect the finger, wore gloves, and avoided cold temperatures. Id.

A number of medical professionals have also, over the years, diagnosed claimant with depression and mood disorder. See, e.g., id. at 303 (Physician's Assistant Deaton listing depression among claimant's conditions in November 1998); id. at 302 (Dr. Betat's February 1999 notation that claimant suffered from "some mild reactive depression due to his circumstance"); id. at 319 (Dr. Baron's consultative diagnosis for the DDS in January 2002 of mild to moderate mood disorder due to medical conditions); id. at 583–88 (Dr. Pick's consultative evaluation for the DDS including a DSM-IV diagnosis for Axis I of mood disorder secondary to a general medical condition); id. at 567–80 (Dr. Tyl's "Psychiatric Review Technique" form concluding that claimant has mood disorder, leading to mild limitations in his activities of daily living, social functioning, and concentration). Other doctors have noted the possibility of additional psychological problems. See id. at 583–88 (Dr. Pick's consultative evaluation for the DDS noting that further psychiatric investigation should be undertaken to determine if there is "questionable bipolar disorder as was perhaps mentioned by [claimant's] psychiatrist"[2]).

Although the bulk of the documentation surrounding claimant's medical conditions relates to his back condition, Raynaud's Syndrome, and depression, several other conditions appear within the record. Claimant's treating physicians noted a hepatitis B infection in 1998 and 1999. Id. at 302–03. GERD also appears in claimant's medical history. See, e.g., id. at 20. The record additionally reflects that claimant suffers from rheumatoid arthritis and scoliosis. See id. at 302, 275 (arthritis); 283, 310 (scoliosis). Finally, there are references to a sudden hearing loss in May 2002. See, e.g., id. at 21.

II.     Procedural Background

On August 4, 2000, claimant filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. section 423 et seq., and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. sections 401–433, alleging a disability onset date of December 31, 1998. Tr. at 168–77. Both claimant's original application and a subsequent application for reconsideration were denied. Id. at 92, 97. In July 2001 claimant requested an evidentiary hearing on his application, and a hearing was held before an Administrative Law Judge ("ALJ") on August 5, 2002.

At the hearing, the ALJ considered the available medical evidence, claimant's testimony, the arguments of claimant's former attorney Mr. Wall, and the testimony of vocational expert Robert Raschke. In a decision dated January 22, 2003, the ALJ found that claimant had the "severe impairments" of degenerative disk disease of the lumbar spine, hepatitis B, rheumatoid arthritis, and GERD. Id. at 23. The ALJ further found that claimant's Raynaud's Syndrome, depression, and hearing problems did not represent severe impairments. Id. The ALJ concluded that claimant's "severe impairments" did not meet or equal any listed impairment in the Social Security regulations, and thus that claimant had the residual functional capacity to perform a range of work at the "light" exertional level, provided that the job included a sit-stand option and did not involve working around temperature extremes. Id. Using this residual functional capacity and the testimony of vocational expert Raschke, the ALJ also concluded that there were three possible jobs claimant could perform: leather goods folder, etching operator, and cashier. Id. at 24. Based on these

4

findings, the ALJ decided that claimant had not been disabled within the meaning of the Social Security Act and regulations. Id. at 24.

Claimant filed a request for review of the decision with the Appeals Council, and on May 6, 2003, the Appeals Council denied the request for review. Id. at 6–9. On May 22, 2003, in a separate action, claimant appealed the Appeals Council's decision to this court.

On March 31, 2003, while the appeal on his first application was still pending, claimant filed a second application for disability benefits and supplemental security income. Id. at 498–500. On July 1, 2003, claimant's second application was denied. Id. at 501–04. After claimant filed for reconsideration, his second application was granted on November 3, 2003. Under the November 3, 2003 grant, claimant was found disabled as of January 23, 2003, the day after the ALJ's unfavorable decision on the first application. See Stipulation and Order of Remand, Civil No. 03-02425 MHP; see also Social Security Administration, Emergency Message 99-147 (1999). The November 3, 2003 grant is not part of the record before the court, but the basis for the favorable determination can be inferred from the Disability Determination Rationale ("DDR") form completed on October 10, 2003, which provides that claimant's allegations were neck pain, back pain, and depression, and concludes as follows:

> DR THORNBURG PHYSICAL MC GIVES CLMT A SEDENTARY RFC W/ NO STOOPING. PER THE MEDICAL VOCATIONAL RULES, RESTRICTIONS TO NEVER ON [sic] STOOPING USUALLY RESULTS [sic] IN A MED-VOCAT'L GRANT. THEREFORE, CLMT'S JOB BASE IS SIGNIFICANTLY ERODED BELOW THAT OF SEDENTARY WORK AND HE IS CONSIDERED AN ALLOWANCE.

Tr. at 571. Dr. Thornburg's residual functional capacity assessment of claimant at the sedentary level was based solely on claimant's degenerative disk disease and spinal stenosis. Id. at 511–18.

When claimant's second application was granted, both parties to the appeal regarding the first application agreed to stipulate to a remand in order for the Commissioner of Social Security ("Commissioner") to reevaluate the denial of the first application in light of the approval of the second. Thus, the matter was remanded to the Appeals Council on November 21, 2003 with instructions to "reconcile the subsequent allowance of benefits with the Administrative Law Judge's previous denial." Stipulation and Order of Remand, Civil No. 03-02425 MHP.

In order to perform the reconciliation, the Appeals Council solicited the opinion of a member of its medical staff, Dr. Michael Dennis. In his report Dr. Dennis stated that he had "reviewed the medical evidence submitted in the claimant's case," summarized claimant's history of back pain from 1998 and Raynaud's Syndrome from early 2002, and concluded that "for all purposes the claimant should be viewed as totally functionally impaired" based on the combination of degenerative changes with stenosis coupled with Raynaud's Syndrome with an onset date of March 21, 2002, the date claimant was diagnosed with Raynaud's Syndrome. Id. at 5G–H. Dr. Dennis did not explicitly discuss the DDR for the second grant or determine the point in time at which claimant's back problems, standing alone, became completely disabling. The Appeals Council adopted Dr. Dennis's opinion, and on September 30, 2004 issued a decision granting claimant disability insurance benefits beginning March 21, 2002 "based on the combination of claimant's degenerative changes with stenosis coupled with Raynaud's disease requiring anti-coagulation." Id. at 5B–C.

On December 2, 2004, claimant filed the instant complaint before this court, asserting that the Appeals Council's decision denying benefits prior to March 21, 2002 was erroneous, and on June 30, 2005 he moved for summary judgment. Defendant filed a cross-motion for summary judgment and in opposition to plaintiff's motion for summary judgment on August 30, 2005.

Claimant argues that the Appeals Council's decision to deny benefits for the period between December 31, 1998 and March 20, 2002 is deficient for four reasons. First, claimant argues that the Appeals Council did not adequately reconcile the evidence supporting the successful second application with the ALJ's previous denial of the first application. Second, claimant argues that the Appeals Council did not properly consider the combined effect of all claimant's impairments, both severe and non-severe. Third, claimant argues that the Appeals Council did not apply the proper techniques or follow the proper procedure in the evaluation of claimant's mental impairments. Fourth, claimant argues that the Appeals Council failed to accord proper weight to the statements of his treating physicians. Defendant, on the other hand, argues that it adequately reconciled claimant's

1  applications in compliance with the court's previous order, that it should be presumed to have
2  considered the entire record, and that its consideration of claimant's impairments was proper.

LEGAL STANDARD

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence. 42 U.S.C. § 405(g); Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). The court's review "must consider the record as a whole," including evidence that supports the Commissioner's decision and evidence that detracts from it. Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Nonetheless, where evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the court must defer to the Commissioner's decision and may not substitute its judgment for that of the Commissioner. See Reddick v. Chater, 157 F. 3d 715, 720–21. The Commissioner's determinations of law, however, are reviewed *de novo*. See McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000). Thus even if substantial evidence supports the Commissioner's fact findings, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978) (quoting Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968)).

DISCUSSION

Claimant alleges four bases for remand. The first is a failure to comply with this court's order. The others are alleged failures to comply with regulations governing the disability evaluation process itself. The court will consider each in turn.

7

I.      Reconciliation of the November 3, 2003 Grant of Benefits With the ALJ's Previous Denial

Claimant first argues that the Commissioner has failed to adequately reconcile the grant of benefits following the second application with the ALJ's unfavorable decision on the first application, in violation of this court's prior order.[3] The order, dated November 21, 2003, provides in relevant part that "[t]he purpose of the remand is to reconcile the subsequent allowance of benefits with the Administrative Law Judge's previous denial. The file pertaining to Plaintiff's subsequent application for benefits will be obtained and all the evidence will be considered in accordance with HALLEX I-5-3-17, § III.B.2." Stipulation and Order of Remand, Civil No. 03-02425 MHP. HALLEX I-5-3-17, section III.B.2, is an instruction found in the Social Security Administration's Hearings, Appeals, and Litigation Law manual ("HALLEX"), which was referenced by the court to provide additional guidance for the defendant on remand. This HALLEX instruction requires the Appeals Council to consider whatever "new and material evidence" led to the grant of benefits on the second application and to determine the extent to which this evidence relates to the prior period. HALLEX I-5-3-17, § III.B.2. In making this determination and explaining its reasoning in a written decision, the Appeals Council "must . . . [d]iscuss the weight it assigned to evidence in resolving conflicts in the record, stating which evidence is more persuasive and why." HALLEX I-3-8-3.

Here, based on the record currently before the court, the sole basis for the grant of disability benefits on the second claim was the finding that claimant's back condition, standing alone, was sufficient to warrant a determination of disability beginning January 23, 2003. There was no medical reason given for commencing benefits on this date; rather, January 23, 2003 is the earliest possible date for the grant of benefits based on the ALJ's unfavorable January 22, 2003 decision on claimant's first application. It follows, then, that claimant's back condition was completely debilitating at least as early as that date. At a minimum, the Appeals Council was required as part of the reconciliation to determine the point in time when the back condition became totally debilitating, and to explain the reasons for its conclusion.

Instead, the Appeals Council appears to have simply evaluated the evidence that was considered in connection with the second application *de novo*, without regard to the conclusion reached on the basis of that evidence. The Appeals Council summarized and adopted the opinion of its medical expert, Dr. Dennis, that claimant should be found disabled based on the impairments of degenerative changes with stenosis and Raynaud's Syndrome, beginning on the date when claimant was diagnosed with Raynaud's Syndrome. Id. at 5C. While Raynaud's Syndrome may well have contributed to claimant's reduced residual functional capacity, and indeed must be considered, see infra Part II, the diagnosis of Raynaud's Syndrome appears to have nothing to do with the grant of benefits on the second claim. Id. at 5B–C, 5G–H.

Both the Appeals Council's decision and Dr. Dennis's opinion fail to discuss with any specificity the evidence considered, other than to reference the ALJ's January 22, 2003 decision. Id. Dr. Dennis's opinion mentions no specific medical evaluations and just four dates: December 31, 1998, claimant's alleged onset date; 1998, when claimant was diagnosed with "degenerative changes involving the cervical and lumbar spine with evidence of early pseudo spondylolisthesis of L4-5, secondary to degenerative changes"; 2002, when claimant started experiencing symptoms of Raynaud's Syndrome; and, March 21, 2002, the date claimant was noted to have significant Raynaud's Syndrome. Id. at 5G–H. The omission of any specific reference to reports considered and to the status of claimant's impairments from 1998 through 2002, as well as from 2002 through 2004, makes it impossible for the court to discern whether Dr. Dennis or the Appeals Council genuinely engaged in efforts to reconcile the unfavorable January 22, 2003 decision of the ALJ with evidence connected with claimant's second successful application for benefits. The Appeals Council's decision and Dr. Dennis's opinion jointly reflect, at a minimum, a failure to reconcile the basis for the favorable determination in claimant's second application, Dr. Thornburg's residual functional capacity of "sedentary" based solely on claimant's degenerative disk disease and spinal stenosis, with the rest of the record. See id. at 511–18.

Additional inconsistencies further underscore the lack of meaningful analysis. Both the Appeals Council's decision and Dr. Dennis's opinion note that "the stenosis alone limited the

9

claimant to <u>sedentary</u> work" but nonetheless incongruously conclude that prior to the onset of claimant's Raynaud's Syndrome on March 21, 2002, "claimant had the residual functional capacity to perform <u>light</u> work . . . ." <u>Id.</u> at 5C, 5H (emphasis added). Similarly, both the Appeals Council's decision and Dr. Dennis's opinion find that the onset date of claimant's disability should be March 21, 2002, "the time frame in which claimant was noted to have significant Raynaud's disease," but still conclude that <u>prior</u> to the March 21, 2002 onset date of claimant's Raynaud's Syndrome, claimant's residual functional capacity should include a preclusion—based on Raynaud's Syndrome—from working around temperature extremes. <u>Id.</u>

     Defendant asserts that because there is a presumption of regularity given to administrative decisions, it should be presumed that all the medical evidence in claimant's case was reviewed. <u>See</u> Def.'s Cross-Motion for Summary Judgment at 4 (relying on <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 415 (1971), <u>overruled on unrelated grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977)). Defendant overlooks, however, the Supreme Court's additional statement in <u>Overton Park</u> that the "presumption is not to shield [the administrative] action from a thorough, probing, in-depth review." <u>Overton Park</u>, 401 U.S. at 415. Regardless of any general presumption of regularity, the Appeals Council is not exempted from its specific responsibilities to consider the evidence and to develop the record in accordance with this court's previous order and its own regulations and rules.

     In order to satisfactorily reconcile the subsequent allowance of benefits with the ALJ's previous denial, on remand the Appeals Council must consider the fact that under the second application claimant was determined to be fully disabled based solely on a residual functional capacity assessment of "sedentary" formed in consideration of degenerative disk disease and spinal stenosis, and must make an express finding as to when claimant's back condition limited his residual functional capacity to the point at which he could no longer work. In so doing, the Appeals Council must consider all material evidence associated with both claims, and must discuss the weight it assigns to evidence, stating which evidence is more persuasive and why. <u>See</u> HALLEX I-5-3-17, § III.B.2; <u>see also</u> HALLEX I-3-8-3. Furthermore, the Appeals Council's analysis must comport

with the Social Security Administration regulations found in 20 C.F.R. sections 404.1520 and 404.1520a, as discussed below.

II.     Consideration of All of Claimant's Medically Determinable Impairments

Claimant further contends that in making its disability determination in this case the Appeals Council failed to properly consider the combined effect of all claimant's impairments, both severe and non-severe. To determine whether a claimant is disabled within the meaning of the Act the Social Security Administration follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In the fourth step of this process, the adjudicator assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(iv). This assessment must be based on all relevant evidence in the record, and the adjudicator

> must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

S.S.R. 96-8P (Cum. Ed. 1996).

Here, the ALJ identified four severe impairments and three non-severe impairments: "claimant has the severe impairments of degenerative disk disease of the lumbar spine, hepatitis B, rheumatoid arthritis and GERD"; and "[c]laimant's Raynaud's phenomena effecting the long middle finger of his right hand, depression and hearing problem do not represent severe impairments." Tr. at 23. The ALJ's original decision does not make clear which of claimant's severe and non-severe impairments were considered in establishing the residual functional capacity. The transcript of the hearing does, however, seem to indicate that the ALJ considered claimant's "orthopedic injury" and the condition of claimant's hand due to Raynaud's Syndrome. See id. at 74. There is no evidence that the ALJ considered all of claimant's impairments, whether severe or non-severe, including claimant's hepatitis B, rheumatoid arthritis, scoliosis, GERD, and depression, in establishing the residual functional capacity.

On remand, the Appeals Council specifically stated that it did not adopt the ALJ's findings or conclusions—among which were the statements about claimant's severe and non-severe impairments, as well as claimant's residual functional capacity—regarding whether the claimant is disabled for the period prior to March 21, 2002. Tr. at 23, 5B. However, the Appeals Council's discussion of claimant's impairments is limited to the same two impairments considered by the ALJ—"degenerative changes with stenosis coupled with Raynaud's disease requiring anti-coagulation"—and its residual functional capacity for the period prior to March 21, 2002 mirrors the ALJ's—"to perform light work not around temperature extremes with a sit/stand option." Id. at 5C. Likewise, although Dr. Dennis stated that he "reviewed the medical evidence submitted in the claimant's case," his discussion of claimant's impairments is limited to claimant's back pain and Raynaud's Syndrome. Id. at 5G–H. There is no evidence that Dr. Dennis or the Appeals Council considered all of claimant's impairments, whether severe or non-severe, including claimant's hepatitis B, rheumatoid arthritis, scoliosis, GERD, and depression, in evaluating claimant's condition prior to March 21, 2002 and establishing the residual functional capacity for that period of time.

The adjudicator is responsible for determining the effect of each of the claimant's impairments on his ability to perform gainful activity. See, e.g., Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir. 1987) (emphasizing that claimant's mental condition should have been considered); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (observing that the ALJ was "responsible for determining the effect of Celaya's obesity [which was not explicitly raised by Celaya as a disabling factor] upon her other impairments, and its effect on her ability to work and general health"). On remand, a multiple impairments analysis considering not only claimant's back problems and Raynaud's Syndrome, but also his hepatitis B, rheumatoid arthritis, scoliosis, GERD, and depression, for the period prior to March 21, 2002, must be carried out. In order to determine whether claimant was disabled prior to March 21, 2002, specific findings as to the onset dates of claimant's impairments are critical. See S.S.R. 83-20 (Cum. Ed. 1983). If the evidence is not definite and medical inferences need to be made in order to determine the onset dates, a medical expert must

assist in the determination. See id.; see also Armstrong v. Commissioner of Social Security Admin., 160 F.3d 587, 590 (9th Cir. 1998).[4]

### III.     Assessment of Claimant's Mental Impairments

Claimant next contends that the Appeals Council did not apply the proper technique in the evaluation of claimant's mental impairment, as specified by 20 C.F.R. section 404.1520a. Defendant, on the other hand, asserts that since the ALJ determined claimant's depression was not a severe impairment, neither the ALJ nor the Appeals Council bore any duty to apply the special technique because it is only required when the claimant has a "medically determinable mental impairment(s)." See id.

In addition to the basic procedural steps of the five-step sequential evaluation process set forth in the regulations at 20 C.F.R. section 404.1520, the regulations provide a special technique to be applied in evaluating the effect of a mental impairment. For purposes of this action, that technique may be summarized in four steps. **First**, the adjudicator must determine whether, based on the claimant's symptoms, signs, and laboratory findings, the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If not, the special technique does not apply. **Second**, the adjudicator must rate the degree of functional limitation resulting from the impairment in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(b)(2), 404.1520a(c). **Third**, if ratings are predominantly "none" or "mild," the impairment is determined to be not severe. 20 C.F.R. § 404.1520a(d)(1). If the mental impairment is severe, an analysis is undertaken to determine whether it meets or is equivalent to a listed disorder, or if not, what the claimant's residual functional capacity is. 20 C.F.R. §§ 404.1520a(d)(2), 404.1520d(3). **Fourth**, the written decisions of the ALJ and the Appeals Council must incorporate the findings based on the application of the technique, including a specific finding for each of the functional areas listed in step two. 20 C.F.R. § 404.1520a(e)(2).

The court turns first to defendant's argument that the special technique for evaluating mental impairments was not required in claimant's case. A finding that claimant's mental impairment is *not*

*severe* is not the same as a finding that claimant does not have a medically determinable impairment *at all*. The regulations indicate that once a medically determinable mental impairment is identified, the special technique must be applied in order to determine the degree of the claimant's limitation. See 20 C.F.R. § 404.1520a(b)(1). The severity of the impairment is expressly considered at step three, but a finding that the impairment is not severe does not obviate the need to perform the specified analysis and documentation. 20 C.F.R. § 404.1520a(d). Thus, defendant's argument fails.

The court finds that the Commissioner, through her agents the ALJ and the Appeals Council, committed an error of law by failing to apply the special technique in claimant's case. Neither the ALJ nor the Appeals Council followed the special technique found in 20 C.F.R. section 404.1520a. The ALJ engaged in a brief discussion of claimant's symptoms, signs, and diagnoses, and determined that claimant has a mental impairment, which might satisfy step one, but then disregarded the rest of the special technique by concluding that the impairment is non-severe without providing specific findings as to the degree of limitation in each of the functional areas. Cf. 20 C.F.R. § 404.1520a(e)(2). The Appeals Council's decision fails to mention claimant's symptoms, signs, and diagnoses, or to engage in any discussion whatsoever about claimant's mental impairment. This failure is particularly unfortunate considering that part of the record before the Appeals Council was the June 18, 2003, evaluation completed by Dr. Tyl, which follows the special technique set forth in 20 C.F.R. section 404.1520a to reach conclusions not inconsistent with those reached by claimant's treating, examining, and evaluating physicians in the past. Tr. at 567–80; see also Tr. at 303, 302, 300, 275, 202, 319, 701, 583–88. On remand, the special technique for evaluation of mental impairments must be applied to claimant's mental impairments and documented in the Appeals Council's written decision, in accordance with 20 C.F.R. section 404.1520a.

IV.   Application of the Treating Physician Rule

Claimant highlights the treating physician rule found at 20 C.F.R. section 404.1527(d)(2) and argues that the ALJ and the Appeals Council have failed to abide by it. Claimant does not, however, explain precisely when or how he believes the rule to have been violated. Based on the record, and

1  without more explanation from the claimant, the court finds that the record does not reflect that the
2  defendant has violated the treating physician rule.

CONCLUSION

For the reasons stated above, the court GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment. This action is hereby REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. section 405(g), for further proceedings consistent with the foregoing order. The clerk shall close the file.

IT IS SO ORDERED.

Date:  October 13, 2005

MARILYN HALL PATEL
United States District Judge
Northern District of California

**ENDNOTES**

1.  This medical condition is referred to by the parties as "Raynaud's Syndrome," "Raynaud's phenomena," and "Raynaud's disease." The court will use "Raynaud's Syndrome."

2.  Dr. Pick noted that claimant had seen a psychiatrist, a Dr. Williams, on May 14, 2003, although the record does not otherwise reflect this visit. Id. at 583.

3.  Claimant argues that by failing to abide by the stipulation and remand order, defendant has violated the "law of the case" doctrine. See Pl.'s Motion for Summary Judgment at 7–10. Although claimant's reliance on this doctrine is misplaced in the instant case, the court will address the substance of claimant's underlying arguments about defendant's failure to fully reconcile the evidence in the claims.
    Claimant also raises a new argument related to reconciliation in the opposition memorandum; specifically, that this court should determine that claimant was disabled beginning April 6, 2000. See Pl.'s Opposition to Defendant's Cross-Motion for Summary Judgment at 5–8. This argument is not timely raised, and the court will not reach it here.

4.  Claimant argues that medical experts in the fields of orthopedics, psychiatry, and immunology should be called. See Pl.'s Motion for Summary Judgment at 11; see also Pl.'s Opposition to Defendant's Cross-Motion for Summary Judgment at 8–9. The court will leave to the Commissioner to determine what expert testimony, if any, is necessary to determine the onset dates of claimant's impairments and thus his disability, if any, prior to March 21, 2002.